UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| M. ENGIN DERKUNT | § § | CIVIL ACTION |
| V. | § § | NO: A-09-CA-172-SS |
| SOUTHWEST AIRLINES CO. & eBAY, INC. | § § § | |

## PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL OF DEFENDANT eBAY

TO THE HONORABLE JUDGE SPARKS:

COMES NOW Plaintiff DERKUNT, files his MOTION FOR VOLUNTARY DISMISSAL OF DEFENDANT eBAY, and, in support thereof, respectfully gives the following explanation:

1. eBAY made 3 arguments in its Motion to Dismiss (and the Court seemed to have agreed): [a] that Derkunt has **no standing** because it was Rindfuss who made the purchase; [b] that Derkunt **fails to state a claim**; and [c] that the venue need be **Santa Clara County**, California.

2. Derkunt does not quite comprehend or agree with eBAY's reasoning on any of these issues but Derkunt has no financial wherewithal to fight a heavy sanctions order[1] by this Court. eBAY is a $29-billion company; Derkunt is a poor person's lawyer with a mostly *pro bono* practice. The balance of power clearly tilts towards a Voluntary Dismissal.

3. While eBAY did argue the "standing" issue, the Court seems to take that issue even

---

[1] The last time Derkunt got sanctioned by this Court, there was only a defense Motion to sanction his client, who did not show up for trial. The only thing Derkunt knew about his client and related to the Court (during the trial) was that, as far as Derkunt knew, his client was a civilian support staff (for the Iraqi and Afghani campaigns) in Djibouti. His client, who had found out about the adverse jury verdict had stopped communicating with Derkunt. Derkunt has no security clearance to inquire further about what a civilian might be doing in the middle of a war, whether that was just a cover for a more sensitive national security assignment, etc. This Court, on its own Motion and without giving Derkunt a chance to explain himself, felt imposing a heavy sanction on Derkunt was just and fair.

further. The fact that it was Rindfuss, and not *directly* Derkunt himself, who made the eBAY purchase of the SWA travel voucher, seems to have convinced the Court that Derkunt lacks standing (except through the "third party beneficiary" provisions of the DTPA, which the Court seems to dislike). In reality, Derkunt does have standing even without such DTPA provisions: at all times Rindfuss acted in relation to this eBAY purchase, he was acting on behalf of Derkunt. Derkunt was the **principal** and Rindfuss was the **agent** because Rindfuss was not looking to get a gift for Derkunt but Derkunt had asked Rindfuss to find an inexpensive way to travel to Knoxville, Tenn., for a court hearing (as usual, Derkunt was on a *pro bono* assignment on behalf of a federal prisoner and had doubts if he would even get compensated for the airfare). The fact that Derkunt chooses the Motel-6 standards of travel (because his clients are indigent, or nearly so) does not mean that he does not appreciate First Class air travel plus 5-star hotel accommodation standards that are enjoyed by most lawyers he opposes.

4. On the question of "producing cause," eBAY displayed dozens of SWA voucher offerings on the "Travel" section of its website: Derkunt believes that, looking at the "Travel" section of the eBAY website, a **reasonable consumer** would get the impression that these vouchers must be good for air travel and that buying them for that purpose is *Kosher*. eBAY argues, and the Court seems to agree, that the eBAY website is a "marketplace on which 'users' may list items they wish to sell and through which potential buyers may purchase items from third-parties," with the implication that eBAY has nothing to do with anything and that, if you get cheated in these purchases, though luck.

5. Neither eBAY, nor the Court, explains what a **reasonable consumer** is supposed to do: Does she have to investigate each seller? (and through what means?) or Does she gamble each time she makes an eBAY purchase? Derkunt would humbly suggest that eBAY may require its "sellers" to give a "**security deposit**" (the way rental car companies do) or may take *some* responsibility in investigating the "sellers" and the merchandise that is "listed." In Derkunt's mind, even if eBAY

has no duty to screen each individual one-time transaction, when a certain type of transaction is listed dozens of times everyday over a period of several weeks, months, and years, **reasonable consumer**s, like Rindfuss and Derkunt, start assuming that these transactions are *Kosher* and that they mean what they say.

6. Derkunt does not claim that eBAY discriminated against him. What Derkunt claims is that, based on the set of facts he experienced, **either** [a] he was **singled out** (thus, discrimination by SWA) **or** [b] the treatment he suffered was **widespread** (thus, eBAY and SWA had a duty to stop the "listing" of these vouchers which were misleading **reasonable consumer**s: thus, the DTPA, fraud, and contract claims). While eBAY argues, and the Court seems to agree, that there is no possible DTPA case, in Derkunt's view, when an air travel voucher is "listed" in the "Travel" section of a $29-billion website, there is an attached "**implied warranty of merchantability**." §§ 2.314 (b)(3) [UCC] & 17.46 (b)(20) [DTPA], Tex. Bus. & Com. Code.

7. While eBAY makes the absurd argument, and the Court seems to agree, that the dispute with SWA started at BNA, "after obtaining exactly what Mr. Rindfuss paid for." Derkunt did not wish to go to BNA (Nashville), he wished to go PHL (Philadelphia). The fact that Derkunt once wished to go to BNA (on January 26th) has no bearing on where Derkunt wished to go on March 9th. Derkunt did not purchase a voucher for a **one-way** flight from AUS to BNA; he purchased a voucher for a **round-trip** flight anywhere SWA flies and he properly changed it to the March 9th-March 18th AUS-PHL-AUS flight (if his memory serves him right, *before* the January 26th flight). When he was stopped at BNA on March 9th, he had his one-piece checked baggage checked to go to PHL, his son was going to be at the PHL airport, and there seemed to be no other BNA-PHL flights (with further difficulties awaiting to find a PHL-AUS flight at the end of the Spring Break); he felt as if SWA took him hostage. Even if we ignore the round-trip vs. one-way discrepancy, to claim that Derkunt got something of value from SWA at the moment of March 9th BNA dispute, is to claim that a taxicab that is supposed to

take you home from the airport but threatens to leave you in the dark, on the side of the highway, in the middle of nowhere, gave you something of value.

8. Derkunt does not actually know if eBAY did anything actionable. If SWA indeed singled Derkunt out and these air travel vouchers are generally honored by SWA, then Derkunt has a simple discrimination case against SWA and no case against eBAY. But if SWA's defense is that it rigorously fights these air travel voucher sales (although this would not justify SWA taking any *de facto* action, like it did against Derkunt at BNA, against third-party innocent purchasers like Derkunt) and that either [a] eBAY knew (or should have known) these vouchers would not be honored by SWA or that [b] SWA had sent several warnings to eBAY and to Craig's List not to "list" these vouchers in their "Travel" sections, then, Derkunt would think, eBAY should also be liable.

9. Derkunt appreciates the Court's empathy with eBAY and with other large corporations that are haunted by ambulance-chasing attorneys (which, the Court seems to believe, Derkunt is one). Derkunt feels that, if this empathy is felt at the exclusion of any empathy for the innocent consumer, then it becomes a Darwinian empathy (promoting Survival of the Fittest and elimination of the Small Consumer, as in the Yeltsinian Free Market of the 1990s' Russia), as opposed to the recently alleged Sotomayorian empathy (for the underdog). The relevant question, in Derkunt's mind, is: Who is better positioned to know? A $29-billion company with hundreds of listings month after month or a simple one-time purchaser who reasonably trusts eBAY? If reasonable trust of eBAY were not an issue, then there would be thousands of other listing websites, to split the $29-billion wealth (and the $1.8 billion 2008 Net Income).

PRAYER FOR RELIEF:

WHEREFORE, PREMISES CONSIDERED, Plaintiff Derkunt respectfully and voluntarily requests that DEFENDANT eBAY be DISMISSED in the way that this Court feels is appropriate and would keep Derkunt free of sanctions.

Respectfully submitted,

/s/ Derkunt
_____

M. Engin Derkunt
Plaintiff Attorney *pro se*
Texas Bar No. 00785818
P.O. Box 6461,
Austin, Texas 78762-6461
(512) 656-3168 (phone)
derkuntlaw@yahoo.com

## Certificate of Service

This is to certify that a true and correct copy of this Motion has been transmitted, via the Court's electronic filing system, to Messrs. Paul Schlaud, Esq., & Ryan Pierce, Esq., of Reeves & Brightwell, at 211 West 6th Street, Suite 1000, Austin, Texas 78701, on this 9th day of August, 2009.

/s/ Derkunt
_____

M. Engin Derkunt

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| M. ENGIN DERKUNT | § | |
| | § | CIVIL ACTION |
| V. | § | |
| | § | NO: A-09-CA-172-SS |
| SOUTHWEST AIRLINES CO. & | § | |
| eBAY, INC. | § | |

### ORDER ON MOTION FOR VOLUNTARY DISMISSAL

On this day, came before the Court for consideration PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL OF DEFENDANT eBAY. After due deliberation, the Court accepts Plaintiff's Motion.

It is therefore ORDERED that Plaintiff's claims against DEFENDANT eBAY be DISMISSED:

_____ WITH / _____ WITHOUT PREJUDICE.

SIGNED and ENTERED on this _____th day of August, 2009.

_____

THE HONORABLE SAM SPARKS
UNITED STATES DISTRICT JUDGE